UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

City of Lake Elmo,

    Plaintiff,

v.

3M Company,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 16-2557 ADM/SER

___

James J. Thomson, Esq. and Douglas D. Shaftel, Esq., Kennedy & Graven Chartered, Minneapolis, MN and Jeffrey Talbert, Esq., Preti, Flaherty, Beliveau & Pachios, Chartered, LLP, Portland, ME on behalf of Plaintiff.

Wendy Wildung, Esq., Faegre Baker Daniels LLP, Minneapolis, MN and William A. Brewer III, Esq., Michael J. Collins, Esq. and Stephanie L. Gase, Esq., Brewer, Attorneys & Counselors, Dallas, TX on behalf of Defendant.

___

## I. INTRODUCTION

On November 22, 2016, the undersigned United States District Judge heard oral argument on Defendant 3M Company's ("3M") Motion to Dismiss [Docket No. 25]. Plaintiff City of Lake Elmo ("Lake Elmo") is suing 3M to recover costs incurred in response to the discovery of perflourochemicals in its drinking water supply. For the reasons set forth below, 3M's Motion is granted in part and denied in part.

## II. BACKGROUND

**A. Parties**

Lake Elmo is a Minnesota municipal corporation with offices in Lake Elmo, Minnesota. Compl. [Docket No. 1] ¶ 1. 3M is a Delaware corporation with its principal place of business in Maplewood, Minnesota. Id. ¶ 2.

**B. 3M's Production and Disposal of Perflourochemicals**

Beginning in approximately 1950, 3M manufactured a family of chemical compounds known as perfluorochemicals ("PFCs") for use in its products, including stain repellants, paints, hydraulic fluids, and other chemical products. Id. ¶¶ 6, 37.  3M also sold PFCs to other companies for use in their manufacturing processes. Id.

During the 1950s, 3M disposed of PFCs and PFC-containing waste at a facility it owned and operated in Oakdale, Minnesota (the "Oakdale Facilities"). Id. ¶¶ 7, 38–44.  During the early 1970s, 3M disposed of PFCs and PFC-containing waste at the Washington County Landfill (the "Landfill") located in Lake Elmo. Id. ¶¶ 7, 45–49.

The Environmental Protection Agency ("EPA") has issued health advisories for PFCs, warning that drinking water containing PFCs above certain levels poses human health risks. Id. ¶ 10.  The risks include cancer, high cholesterol, increased liver enzymes, decreased vaccination response, thyroid disorders, pregancy-induced hypertension and preeclampsia, and increased risks to a developing fetus. Id. ¶¶ 10, 22, 25, 35.

**C. Discovery of PFCs in Lake Elmo's Drinking Water Supply**

In 2004, the Minnesota Pollution Control Agency ("MPCA") conducted soil and groundwater investigations which detected the presence of PFCs at the Oakdale Facilities and the Landfill. Id. ¶ 61.  The investigations also revealed that the PFCs had leached from the Oakdale Facilities and the Landfill into the groundwater aquifers serving as Lake Elmo's drinking water supply. Id. ¶¶ 9, 61–64, 67–69.

In 2006, the Minnesota Department of Health ("MDH") tested Well #3, in the southern part of Lake Elmo. Id. ¶¶ 66–67.  Well #3 had been partially built in 2002 in anticipation of

future development and then capped with the intent of finishing construction at a future time. Id. ¶ 66. The PFC levels in Well #3 exceeded the levels at which the MDH advises that the water is not safe for human consumption without treatment. Id. ¶ 68. Between 2006 and 2011, the state tested over 100 water samples from private and municipal wells in Lake Elmo that also exceeded those levels. Id. ¶ 69.

**D. Lake Elmo's Alternative Water Supply System**

After learning of the PFC contamination in Well #3 and in aquifers that supply Lake Elmo's drinking water, Lake Elmo developed a plan for an alternative water supply system. Id. ¶¶ 70, 73. That plan involved constructing a new well in the northeast part of Lake Elmo that would convey water through new trunk lines to the southern portion of the city. Id. ¶ 73. Construction on the alternate water supply system is nearly complete and has cost millions of dollars. Id. ¶ 75. Lake Elmo has also purchased water from the City of Oakdale through an interconnection point at the south end of Lake Elmo, expending hundreds of thousands of dollars in payments and connection fees. Id. ¶ 76.

**E. State Court Action, Tolling Agreement**

In December 2010, the State of Minnesota (the "State") commenced an action against 3M in Hennepin County District Court alleging that 3M's release of PFCs into the environment resulted in natural resource damages (the "State Court Action"). See State of Minn. v. 3M Co., No. 27–CV–10–28862 (Minn. D. Ct. 2011) (Burke, J.). On January 14, 2011, Lake Elmo filed a motion to intervene in the State Court Action, alleging claims for common law and statutory nuisance, treble damages under Minn. Stat. § 548.05, common law trespass, strict liability for abnormally dangerous activities, negligent failure to warn of an ultrahazardous condition,

3

statutory well contamination under Minn. Stat. § 103I.241, negligence, and conversion. See Exs. Pl.'s Mem. Opp'n [Docket No. 33] ("State Court Documents") Exs. 4, 5. Lake Elmo's request to intervene was granted on July 21, 2011. Id. Ex. 9.

On October 1, 2013, Lake Elmo voluntarily dismissed its claims pursuant to Minnesota Rule of Civil Procedure 41. Id. Ex. 10. Prior to dismissing its claims, Lake Elmo entered into a tolling agreement with 3M ("Tolling Agreement") in which the parties agreed to "toll the running of any applicable statute of limitations relating to [Lake Elmo's] Claims through and including August 1, 2016." Id. Ex. 11 ¶ 1. The Tolling Agreement states that "[n]othing in this Agreement shall be deemed to revive any claim that is or may already be barred as of the date of this tolling agreement." Id. ¶ 2.

**F. Present Action**

On July 28, 2016, Lake Elmo filed this action alleging liability under § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq. (Count I), as well as state law claims for common law and statutory nuisance (Count II), common law trespass (Count III), statutory well contamination under Minn. Stat. § 103I.241 (Count IV), negligence (Count V), and conversion (Count VI).

3M moves to dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

### III. DISCUSSION

**A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction**

3M argues that the Complaint must be dismissed under Rule 12(b)(1) for the City's failure to allege facts establishing Article III standing, which is a prerequisite to subject matter

jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992). Specifically, 3M contends Lake Elmo has not sufficiently alleged an injury in fact or that any harm to Lake Elmo is traceable to 3M's conduct.

**1. Standard of Review**

3M's Motion attacks the sufficiency of the pleadings and thus raises a facial, rather than factual, challenge to the Court's subject matter jurisdiction. See Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). In analyzing a facial challenge to its jurisdiction, the Court applies the same standard of review applied in Rule 12(b)(6) cases. Id. The Court "accept[s] as true all factual allegations in the complaint, giving no effect to conclusory allegations of law." Id. Plaintiffs must affirmatively and plausibly assert facts that suggest they have the right to jurisdiction, rather than facts that are merely consistent with that right. See id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Hamilton v. Palm, 621 F.3d 816, 818 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**2. Article III Standing**

"Article III standing is a threshold question in every federal court case." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003). The party invoking federal jurisdiction bears the burden of establishing standing. Lujan, 504 U.S. at 560. To meet this burden, a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the challenged conduct of the defendant; and (3) a likelihood that a favorable ruling will redress the alleged injury. Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc., 424 F.3d

840, 843 (8th Cir. 2005) (citing Lujan, 504 U.S. at 560–61). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.

### a. Injury in Fact

3M argues that Lake Elmo has not alleged an injury for purposes of its CERCLA claim because the Complaint does not allege that the PFC levels in Well #3 or the groundwater aquifers exceeded the federally mandated maximum contamination levels set by the EPA. Lake Elmo responds that it was injured by incurring millions of dollars in response costs associated with the presence of PFCs in Well #3, and that no minimum threshold of contamination is required under CERCLA.

Congress enacted CERCLA to effectuate the "prompt cleanup of hazardous waste sites and imposition of all cleanup costs on the responsible party." Meghrig v. KFC W., Inc., 516 U.S. 479, 483 (1996) (quoting Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc., 920 F.2d 1415, 1422 (8th Cir. 1990)). CERCLA is a strict liability statute, and "liability does not depend on the existence of a threshold quantity of a hazardous substance." United States v. Alcan Alum. Corp., 964 F.2d 252, 260 (3d Cir. 1992); Johnson v. James Langley Operating Co., 226 F.3d 957, 962 (8th Cir. 2000) ("CERCLA's plain language does not incorporate any quantitative threshold into its definition of hazardous substances."). Section 107 of CERCLA provides that a party who is responsible[1] for the release or threatened release of hazardous substances will be

---

[1] Under 42 U.S.C. 9607(a), "responsible parties" include:

(1) the owner and operator of a vessel or a facility,

held liable for the "necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The costs of providing alternative water supplies are included in the necessary response costs that are recoverable from liable parties under CERCLA. 42 U.S.C. § 9601(23), (24).

A plaintiff who has incurred response costs covered under CERCLA has suffered a sufficient injury to meet the minimum Article III threshold for an injury in fact. See, e.g., Wilson Rd. Dev. Corp. v. Fronabarger Concreters, Inc., 971 F. Supp. 2d 896, 917 (E.D. Mo. 2013) ("WRDC did incur costs within the meaning of CERCLA, and therefore has standing to pursue claims under CERCLA.").

Here, Lake Elmo alleges that it spent millions of dollars to construct an alternate water supply system in response to the presence of PFCs in aquifers serving Well #3. See Compl. ¶¶ 61–64, 67–68, 75–76. These allegations alone are sufficient to allege an injury in fact under Article III. Moreover, Lake Elmo alleges that the PFC levels in Well #3 exceeded government-established thresholds related to human health risks. See id. ¶ 68 (alleging the "PFC levels in

---

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance . . . .

Well #3 exceeded the levels at which MDH will advise the public that the tested water is not safe for human consumption without treatment"). Thus, Lake Elmo has alleged a sufficient injury to confer Article III standing.

### b. Traceability

Article III standing also requires a causal connection between the injury and the challenged conduct. Lujan, 504 U.S. at 560. In other words, the injury must be "fairly traceable" to the defendant's conduct "and not the result of the independent action of some third party not before the court." Id. (alterations omitted).

3M argues that Lake Elmo has not satisfied this element because it has not shown that its alleged response costs are traceable to 3M's conduct. 3M contends that the alternate water supply costs were not incurred solely to respond to PFC levels, but are also the result of increased water usage in the city. This argument is rejected because the Complaint sufficiently alleges that its response costs were directly related to 3M's disposal of hazardous substances at the Oakdale Facilities and at the Landfill which leached into Lake Elmo's drinking water supply. See Compl. ¶¶ 38, 43–49, 61, 73, 76, 88–93 (alleging 3M disposed of PFC-containing waste products at sites it owned and operated, the PFCs leached into groundwater aquifers that serve as a source for Lake Elmo's drinking water supply, and Lake Elmo was required to implement an alternative water system as a result); 42 U.S.C. § 9607(a)(3) (imposing CERCLA liability on "any person who . . . arranged for disposal . . . of hazardous substances owned or possessed by such person"). These allegations are taken as true at the motion to dismiss stage. Additionally, Lake Elmo need not allege that the response costs were "solely" a response to the increased level of PFCs in its water supply. Because CERCLA is a strict liability statute, "the motives of the . . .

8

party attempting to recoup response costs under 42 U.S.C. § 9607(a)(4)(B) are irrelevant." Gen. Elec. Co., 920 F.2d 1418; Carson Harbor Vill., Ltd. v. Unocal Corp., 270 F.3d 863, 872 (9th Cir. 2001) ("In determining whether response costs are 'necessary,' we focus not on whether a party has a business or other motive in cleaning up the property, but on whether there is a threat to human health or the environment and whether the response action is addressed to that threat.").

3M also argues Lake Elmo has not alleged that its response costs are traceable to 3M's conduct, because Lake Elmo alleges that "3M and other companies disposed of industrial wastes" at the Oakdale Facilities. Compl. ¶ 39 (emphasis added). This argument fails because after CERCLA liability is established, the polluter bears the burden of showing that other parties should be held jointly and severally liable for the cost of responding to the hazardous wastes. See Alcan, 990 F.2d at 722 ("Alcan as the polluter bears the ultimate burden of establishing a reasonable basis for apportioning liability."). Therefore, Lake Elmo has satisfied the traceability threshold of Article III standing.

3M's Rule 12(b)(1) motion is denied.

**B. Rule 12(b)(6):  Failure to State a Claim**

3M also argues that Lake Elmo's state law claims should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879–80 (D. Minn. 1993). Any ambiguities

concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. The Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

A pleading must relate "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**1. Statute of Limitations**

3M argues Lake Elmo's state law claims are barred by Minnesota's general six year statute of limitations.[2] See generally Minn. Stat. § 541.05. 3M contends Lake Elmo knew or should have known of the existence of PFCs by at least March 2005, when PFCs were alleged to have been found in municipal wells serving the City of Oakdale. Compl. ¶ 65. 3M does not explain why the discovery of PFCs in the City of Oakdale's wells should have caused Lake Elmo to know of the presence of PFCs in Well #3 in Lake Elmo.

Assuming without deciding that Lake Elmo knew or should have known in March 2005

---

[2] In its opening brief, 3M also argued that the CERCLA claim is time barred. Def.'s Mem. Supp. Mot. Dismiss [Docket No. 27] at 17–18. In its reply brief, 3M withdrew this argument without prejudice. Def.'s Reply Mem. [Docket No. 36] at 4 n.15.

of the existence of PFCs in Well #3, the six-year statute of limitations would have required Lake Elmo to bring its claims by March 2011. Lake Elmo intervened in the State Court Action in January 2011, at least two months before the statute of limitations would have expired. See State Court Documents Ex. 4 (Lake Elmo's State Court Complaint asserting state law actions for, among other things, nuisance, trespass, statutory well contamination, negligence, and conversion).

Although Lake Elmo eventually dismissed its claims against 3M in the State Court Action on October 1, 2013, 3M admits that prior to dismissal the parties entered into the August 30, 2013 Tolling Agreement. See State Court Documents Ex. 11. The Tolling Agreement tolls the statute of limitations through and including August 1, 2016 for Lake Elmo's claims against 3M as of the date of the Agreement—August 30, 2013. Id. ¶ 1. As of that date, Lake Elmo's state law claims were not time barred because they had been filed before the statute of limitations would have otherwise expired in March 2013. Pursuant to the Tolling Agreement, those timely claims were tolled until August 1, 2016. Lake Elmo filed this action on July 28, 2016, which is before the agreed-upon tolling period had expired. Thus, Lake Elmo's state law claims are timely.

3M argues that the claims are not tolled because the Tolling Agreement states that "Nothing in this Agreement shall be deemed to revive any claim that is or may already be barred as of the date of this tolling agreement." Id. ¶ 2. However, as of the date of the Tolling Agreement, the state law claims were not already barred. The claims did not need to be revived because they were timely filed and were pending at the time of the Tolling Agreement. Therefore, this non-revival provision does not apply to the previously filed state law claims.

11

3M nevertheless insists that under Rule 41 of the Federal Rules of Civil Procedure, a voluntary dismissal does not toll the pendency of the action. 3M thus contends that as a result of Lake Elmo's voluntary dismissal in the State Court Action in October 2013, the time period from when Lake Elmo filed its claims in January 2011 until the time it entered into the Tolling Agreement in August 2013 was no longer suspended. At the time Lake Elmo voluntarily dismissed its case, however, 3M had already agreed to "toll the running of any applicable statute of limitations relating to [Lake Elmo's] Claims through and including August 1, 2016." Tolling Agreement ¶ 1. Accordingly, the state law claims are not time barred.

### 2. Landfill Cleanup Act

3M argues that Lake Elmo's claims relating to the 3M deposits at the Landfill are barred by the Landfill Cleanup Act, Minn. Stat. § 115B.39–.445. 3M contends that pursuant to § 115B.40, subd. 7(a)(2) of that Act, Lake Elmo waived its ability to sue another party for environmental response costs associated with pollution emanating from the Landfill, and relinquished those claims to the Commissioner of the MPCA.

This argument fails on at least two grounds. First, the argument is an affirmative defense, which is not the proper subject of a Rule 12(b)(6) motion to dismiss. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 601 n.10 (8th Cir. 2009) ("[A] plaintiff need not plead facts responsive to an affirmative defense before it is raised."). Second, any waiver under § 115B.40 of the Landfill Cleanup Act is extinguished as a matter of law for response costs that have not been reimbursed by July 1, 2004. Minn. Stat. § 115B.40, subd. 8(b). Lake Elmo did not incur response costs until after 2004, and so its claims against 3M are not waived under the Landfill Cleanup Act.

### 3. Conversion

The Complaint alleges that 3M's improper disposal of hazardous waste and subsequent contamination of Lake Elmo's municipal well and water constitute conversion of the City's interest in its well and the water within it. Compl. ¶¶ 124–25. 3M argues that these allegations fail to state a claim for conversion because conversion applies only to personal property, and Lake Elmo's well is real property. 3M further argues that Lake Elmo may not assert a conversion claim based on groundwater because groundwater belongs to the State. Lake Elmo responds that the property right that 3M interfered with is its right to use the groundwater.

Conversion is the willful interference with another's personal property, done without lawful justification, which deprives the person of the use and possession of the property. Christensen v. Milbank Ins. Co., 658 N.W.2d 580, 586 (Minn. 2003); DLH, Inc. v. Russ, 566 N.W.2d 60, 71 (Minn. 1997); Larson v. Archer-Daniels-Midland Co., Inc., 32 N.W.2d 649, 650 (Minn. 1948).

3M is correct that a well is real property, and thus the conversion claim fails with respect to Lake Elmo's well. See Guardian Energy, LLC v. Cty. of Waseca, No. 81-CV-10-365, 2013 WL 684242, at *2 (Minn. Tax Feb. 21, 2013) (holding well is a permanent addition to real property and satisfies statutory definition of property).

With regard to Lake Elmo's right to use the groundwater, riparian rights entitle an owner to the use and enjoyment of the water. See Application of Christenson, 417 N.W.2d 607, 614 (Minn. 1987) ("One does not own the water; one owns riparian rights to the use and enjoyment of the water."). 3M's argument that Lake Elmo has not been deprived of the ability to use the groundwater is unavailing. The Complaint alleges that the water is not safe for human

consumption without treatment, and thus Lake Elmo cannot use the water for this purpose. Comp. ¶ 68. Therefore, the conversion claim will be allowed to proceed at this stage[3] and the motion to dismiss is denied as to this claim.

### 4. Trespass

3M also argues that the Complaint fails to state a claim for trespass because invasion by a particulate matter does not constitute a trespass under Minnesota law. "In Minnesota, a trespass is committed where a plaintiff has the right of possession to the land at issue and there is a wrongful and unlawful entry upon such possession by defendant." Johnson v. Paynesville Farmers Union Coop. Oil Co., 817 N.W.2d 693, 701 (Minn. 2002) (internal quotations omitted). Trespass claims differ from nuisance claims in that "trespass claims address tangible invasions of the right to exclusive possession of land, and nuisance claims address invasions of the right to use and enjoyment of land." Id. at 705.

The Complaint alleges that Lake Elmo "has the legal right to use and enjoy its property, which includes the right to withdraw groundwater," and that 3M trespassed upon Lake Elmo's property "by contaminating it with PFCs and thereby preventing the City from using the groundwater within the aquifer that flows underneath the property." Compl. ¶ 111. As alleged,

---

[3] Although neither party directly addresses the issue, whether the right to use groundwater constitutes personal property under Minnesota law is questionable. Minnesota case law and statutory authority suggests that riparian rights are real property, at least for the purposes of taxation. See State v. Minneapolis Mill Co., 2 N.W. 839, 841 (Minn. 1879) (holding that "the right to the use of water is, for all purposes of taxation, real property and not personal," because the right "is attached as an incident to the riparian land, and belongs and appertains to the same."); Minn. Stat. § 272.03, subd. 1(a) (defining real property for taxation purposes as "all rights and privileges belonging or appertaining to the land"). Because the issue has not been briefed, the Court will not consider it as a basis for dismissal in this motion.

Lake Elmo is complaining of an invasion of the right to <u>use and enjoy</u> its land, rather than to <u>exclusively possess</u> its land. Accordingly, Lake Elmo's claim is one for nuisance, not trespass. See <u>Johnson</u>, 817 N.W.2d at 705 (holding that plaintiffs who complained of their inability to use their land as an organic farm due to defendants' spraying of pesticides that drifted onto their land was a claim for nuisance because plaintiffs did not claim that defendants' actions prevented plaintiffs from possessing any part of their land). Because Lake Elmo does not allege that 3M prevented it from possessing the groundwater, the trespass claim fails. The motion to dismiss is granted for this claim.

### 5. Nuisance

3M argues that the statutory and common law claims for nuisance fail because 3M did not commit any wrongful conduct, and because the Complaint makes only conclusory allegations and bare assertions that 3M caused Lake Elmo's injury. These arguments are unavailing. The Complaint includes sufficient factual allegations specifically describing how 3M's alleged disposal of hazardous waste interfered with Lake Elmo's use of its right to drinking water and enjoyment of its property. See Compl. ¶¶ 38–49, 52–58, 99–101, 105–06. Additionally, "where pollutants cause the harm, . . . the wrongful conduct appears to be self-evident." <u>Highview N. Apts. v. Ramsey Cty.</u>, 323 N.W.2d 65, 71 (Minn. 1982). Therefore, Lake Elmo has sufficiently alleged a claim for nuisance.

### 6. Statutory well contamination

Minnesota Statute § 103I.241 allows a property owner to recover damages from a person whose action or inaction caused contamination of a well. 3M contends the Complaint fails to identify the well at issue, does not allege the well is contaminated, and does not allege that 3M

was the party causing the contamination. These arguments ignore the specific factual allegations that Well #3 was contaminated by 3M's disposal of hazardous waste. The Complaint amply alleges well contamination under Minn. Stat. § 103I.241, and the motion to dismiss is denied as to this claim.

### 7. Negligence

3M argues that the Complaint fails to state a claim for negligence because 3M complied with its regulatory duties and did not directly and proximately cause the contamination. These arguments are premature in a Rule 12(b)(6) motion to dismiss. The negligence claim will not be dismissed merely because 3M disputes whether Lake Elmo will be able to prove its allegations. Therefore, the motion to dismiss is denied as to the negligence claim.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [Docket No. 25] is **GRANTED in part and DENIED in part** as follows:

1. Defendant's motion to dismiss is **GRANTED** as to the claim for trespass (Count Three), and Count Three is therefore is **DISMISSED**.

2. Defendant's motion to dismiss is **DENIED** as to all other claims.

BY THE COURT:

    s/Ann D. Montgomery  
ANN D. MONTGOMERY  
U.S. DISTRICT JUDGE

Dated: February 15, 2017.